# In the United States Court of Federal Claims

Nos. 19-792C & 19-1204C (Consolidated)

(Filed Under Seal: October 30, 2019)

(Reissued: November 7, 2019)

| | |
|---|---|
| **ALASKA STRUCTURES, INC.,** </br></br> Plaintiff, </br></br> v. </br></br> **UNITED STATES,** </br></br> Defendant, </br></br> and </br></br> **CALIFORNIA INDUSTRIAL FACILITIES RESOURCES, INC.,** </br></br> Defendant-Intervenor. | Challenge to corrective action via a pre-award bid protest; basis for the Air Force's decision to take corrective action and issue a revised solicitation for bids; clarity of the terms of the revised solicitation |

Richard J. Conway, Blank Rome LLP, Washington, D.C., for plaintiff.  With him on the briefs and at the hearing was Michael J. Montalbano, Blank Rome LLP, Washington, D.C.

John M. McAdams, III, Trial Attorney, Commercial Litigation Branch, Civil Division, United States Department of Justice, Washington, D.C., for defendant.  With him on the briefs were Joseph H. Hunt, Assistant Attorney General, Civil Division, and Robert E. Kirschman, Jr., Director, and Douglas Mickle, Assistant Director, Commercial Litigation Branch, Civil Division, United States Department of Justice, Washington, D.C.  Of counsel was Christopher S. Cole and Lt. Col. Damund E. Williams, Air Force Legal Operations Agency, Department of the Air Force, Washington, D.C.

Paul F. Khoury, Wiley Rein LLP, Washington, D.C., for defendant-intervenor.  With him on the briefs and at the hearing were Brian G. Walsh and Cara Lasley, Wiley Rein LLP, Washington, D.C.

**OPINION AND ORDER**[1]

---

[1] Because of the protective order entered in this case, this opinion was initially filed under seal.  The parties were requested to review this decision and provide proposed redactions of any confidential or proprietary information.  No redactions were requested.

LETTOW, Senior Judge.

      Plaintiff Alaska Structures, Inc. ("Alaska Structures") protests the decision of the United States Air Force to undertake corrective action and institute a new solicitation for bids to procure canvass Quonset-shaped shelters ("shelters") for winter use by Joint Base Elmendorf-Richardson in Alaska.  The corrective action follows an earlier post-award protest challenging the Air Force's award of a contract to California Industrial Facilities Resources, Inc. d/b/a CAMSS Shelters ("CAMSS").  In that protest, Alaska Structures argued that snow-load test results of the shelter model proposed by CAMSS should have been part of the record because the solicitation required CAMSS to provide, and the Air Force to consider, the test results.  *See Alaska Structures, Inc. v. United States*, 144 Fed. Cl. 80 (2019).  Alaska Structures moved to require completion of the record by having the government or CAMSS provide the results of snow-load testing of CAMSS' proffered shelter.  *Id*. at 82.  The court granted in part Alaska Structures' motion, ordering production of the initial test report applicable to CAMSS' shelter as a supplement to the record, ruling that providing such a test report was necessary to resolve a plausible claim of inconsistent representations by CAMSS of its shelter's snow-load performance.  *Id*. at 86-87.  CAMSS promptly produced the test result, and those results showed that the tests were performed on a shelter that was significantly shorter than the specification set out in the Air Force's solicitation.  After reviewing the test report that CAMSS produced, the Air Force took corrective action by terminating the CAMSS contract for convenience and issuing a new but substantially similar solicitation that included additional test verification requirements.  AR 37-207.[2]

      Thereafter, Alaska Structures submitted a motion in the initial litigation for leave to file an amended complaint to challenge the corrective action, and then also filed a separate pre-award protest of the new solicitation.  The court consolidated the two cases pursuant to Rule 42(a) of the Rules of the Court of Federal Claims ("RCFC").  *See* Order to Consolidate, No. 19-792C ECF No. 53; No. 19-1204C, ECF No. 15.[3]

      In its protests of the corrective action and the new solicitation, Alaska Structures raises three alleged errors.[4]  First, it contends that the Air Force's decision to take corrective action and

---

[2]The administrative record of the procurement is consecutively paginated, and citations to the record are cited by tab and page as "AR __-__."  Tabs 1-34 of the record may be found at No. 19-792C, ECF No. 26 and tabs 35-48 may be found at No. 19-792C, ECF No. 58.

[3]Because the two separate bid protests were consolidated into a single case, there are two dockets, *i.e.*, Nos. 19-792C and 19-1204C, and the dockets are not identical.  Docket citations are identified accordingly.

[4]The court treats the complaint filed in No. 19-1204C as superseding the proposed amended complaint filed in No. 19-792C because the complaint in No. 19-1204C is broader in scope.  *See* Hr'g Tr. 9:20 to 10:1 (Aug. 16, 2019) ("[T]he first [proposed] complaint [in No. 19-792C] dealt with the notice of corrective action, but didn't directly attack the new solicitation.  We filed a second complaint this week to attack also the solicitation to make sure that we registered our attack prior to the date for submission of offers.  Otherwise, we might be considered untimely.").

solicit new bids was arbitrary and capricious because its needs had not changed and therefore it lacked any rational basis for the decision. Compl. in No. 19-1204 ¶¶ 58-68. Second, Alaska Structures avers that the Air Force's failure to disqualify CAMSS from competing further in the procurement was arbitrary and capricious, after its initial quote contained material misrepresentations. Compl. ¶¶ 69-78. Third, it alleges that the new solicitation contains an ambiguity because it does not identify what type of documentation is acceptable to verify the testing performed concerning snow-load capabilities. Compl. ¶¶ 79-85. Alaska Structures asks in its second complaint that the court declare both the Air Force's decision to take corrective action and its failure to disqualify CAMSS from competing in the new solicitation to be arbitrary, capricious, an abuse of discretion, and inconsistent with federal law and regulation. Compl. at 21. Alaska Structures requests that the court declare the new solicitation ambiguous and enjoin the Air Force both from carrying out its corrective action and allowing CAMSS to continue competing. Compl. at 21. It also requests that the court direct the Air Force to re-open the original solicitation or, in the alternative, enjoin the Air Force from proceeding until ambiguous terms in the second solicitation are corrected. Compl. at 21. A "corrective action in the bid protest context" is an "agency action, usually taken after a protest has been initiated, to correct a perceived error in the procurement process, or in the absence of error, to act to improve the competitive process." *Dellew Corp. v. United States*, 855 F.3d 1375, 1378 n.2 (Fed. Cir. 2017). Corrective actions are reviewed by courts under a rational-basis standard. *See Dell Fed. Sys., L.P. v. United States*, 906 F.3d 982, 991 (Fed. Cir. 2018) ("Corrective action only requires a rational basis for its implementation."). As noted by the Federal Circuit in *Dell Federal Systems*, "[t]he rational basis test asks 'whether the contracting agency provided a coherent and reasonable explanation of its exercise of discretion.'" *Id.* at 992 (quoting *Banknote Corp. of Am. Inc. v. United States*, 365 F.3d 1345, 1351 (Fed. Cir. 2004) (internal quotation marks and citation omitted)).

In the consolidated cases, Alaska Structures filed a motion for judgment on the administrative record on September 30, 2019. *See* Pl.'s Mem. of Law in Supp. of its Mot. for Judgment on the Admin. Record ("Pl.'s Mot."), No. 19-792C, ECF No. 59. The government and CAMSS each responded to Alaska Structures' motion and cross-moved for judgment on the administrative record on October 7, 2019. *See* Mem. in Supp. of [CAMSS'] Resp. & Cross-Mot. for Judgment on the Admin. Record ("CAMSS' Cross-Mot."), No. 19-792C, ECF No. 61; Def.'s Cross-Mot. for Judgment on the Admin. Record & Opp'n to [Pl.'s Mot.] ("Def.'s Cross-Mot."), No. 19-792C, ECF No. 62. After further briefing by parties, *see* Pl.'s Resp. to Def. and Def.-Intervenor's Cross-Motions for Judgment on the Admin. Record and Reply in Supp. of its Mot. for Judgment in the Admin. Record ("Pl.'s Reply"), ECF No. 63; [CAMSS'] Reply in Supp. of its Cross-Mot. for Judgment on the Admin. Record ("CAMSS' Reply"), ECF No. 65; Def.'s Reply in Supp. of its Cross-Mot. on the Admin Record ("Def.'s Reply"), ECF No. 66, the court held a hearing on October 23, 2019.

The court concludes that the Air Force's corrective action had a rational basis, that the newly revised solicitation is not defectively ambiguous, and that CAMSS is not disqualified from making an offer in response to that solicitation. Accordingly, Alaska Structures' motion for judgment on the administrative record is DENIED, and the government's and CAMSS' cross-motions for judgment are GRANTED.

## FACTS[5]

### A. *The Air Force's Initial Solicitation for Quonset-Shaped Canvas Shelters*

On December 3, 2018, the Air Force issued a request for quotes for Alaska Small Shelter Systems, product number AK-V280, or equivalent (the "first solicitation"). *See generally* AR 10. The Alaska Small Shelter System represented a brand name for the requested shelter as produced by Alaska Structures. *Compare* AR 12-73 (Alaska Structures' bid), *with* AR 16-93 (amended solicitation).

The Air Force prepared the solicitation in accordance with commercial item acquisition provisions of Federal Acquisition Regulation ("FAR") Parts 12 and 13, specifically Subparts 12.3, 12.6, 13.1, and 13.5, *see* AR 16-89 to 90, which set out streamlined and simplified procedures for acquiring commercial items. Initially, per that solicitation as amended, questions were due by December 26, 2018 and quotes were due by December 28, 2018. AR 16-89. Potential bidders had to provide pricing information for shelters and "product data on the item(s) being quoted [that were] detailed enough for the [Air Force] to clearly determine that the item(s) meet the salient [minimum] characteristics." AR 16-90; *see also* AR 16-93 (contract line item to be priced).

The solicitation specified that award would be made to the "responsible contractor with the lowest priced quote that meets all of the required salient characteristics." AR 16-90. The requirements were for "Alaska Small Shelter Systems, Version 2 (P/N: AK[]-V280) OR EQUAL in accordance with [enumerated] minimum specifications." AR 16-94 (some emphasis removed). Among other "minimum specifications," those relevant to the protest include: (1) "be[ing] designed to allow one shelter to attach to another shelter," with "[e]nd base frame sections [that are] removable so it can be used to connect other shelters;" (2) "withstand[ing] at least 60 mph wind load per ASCE 7-10;" and (3) "meet[ing] at least 20 [pounds per square foot] ground snow load per ASCE 7-10." AR 16-94.[6] The required size of the shelters was 20-feet wide by 32.5-feet long by 10-feet high. AR 16-94. Further, a question posed by Alaska Structures asked whether offerors proposing shelters equivalent to the brand name had to provide "any 3rd party test reports to verify the wind and snow loads." AR 16-95. The Air Force replied in an addendum to the solicitation that, "[a] 3rd party test report is not required if there are initial tests conducted that verify wind loads over 60 MPH and snow loads of 20 PSF." AR 16-95.

### B. *Proposals Received & the Air Force's Award Decision*

The Air Force received three offers. *See* AR 22-110 (abstract of offers). CAMSS proffered the low bid. AR 18-98 (CAMSS' proposal). Its six-page proposal consisted of a short

---

[5]The recitations that follow constitute findings of fact by the court from the administrative record of the procurement filed pursuant to RCFC 52.1(a). *See Bannum, Inc. v. United States*, 404 F.3d 1346, 1356 (Fed. Cir. 2005) (specifying that bid protest proceedings "provide for trial on a paper record, allowing fact-finding by the trial court").

[6]ASCE 7-10 refers to the American Society of Civil Engineers standard for Minimum Design Loads for Buildings and Other Structures of October 2013.

cover letter, a page of pricing, and four pages of technical characteristics and various photos of the shelter. *See* AR 18-97 to 102. CAMSS represented that its equivalent shelter, product number 20QSA, "[met] all of the salient characteristics," AR 18-97, and provided details of its shelter, specifying measurements, capabilities, structural components, and performance characteristics, AR 18-99 to 102. Relevant to the protest, the details CAMSS provided affirmed that its shelter would "meet at least 20 psf ground snow load per ASCE 7-10," AR 18-99, could "connect to multiple shelters with integrated end-to-end connector flap," AR 18-99, had "[e]nd base frame sections [that] are removable . . . to connect other shelters," AR 18-100, and "met [Army] Test Operational Procedure (TOP) 10-2-175 . . . 20 psf snow load test (per initial test)," AR 18-102. CAMSS provided these details in additional pages attached to its price quote but did not include the publicly available technical specifications sheet for the 20Q shelter system. *Compare* AR 18-99 to 102 (technical details provided by the bid), *with* AR 2-19 (publicly-available technical specifications for the 20Q system). These technical specifications represented that CAMSS' 20Q shelter met "snow load testing [at] 10 psf for 24 hours" and was "engineer[ed] to 20 psf snow load." AR 2-19 (capitalization removed). CAMSS' proposal also did not include the test it stated that it had performed to confirm its representations. *See generally* AR 18-97 to 102 (CAMSS' bid); *see* AR 6-42 (Air Force's responses to Alaska Structures' questions during a protest at the Government Accountability Office ("GAO"), stating "[n]o [snow load] test reports were received").[7] Neither did it provide engineering calculations to support the snow-load capability of its proffered shelter. *See generally* AR 18-97 to 102.

Alaska Structures submitted the highest of the three bids, *see* AR 12-73 (Alaska Structures' proposal), but the second highest of the qualifying bids.[8]

On March 26, 2019 the Contracting Officer contacted CAMSS to confirm whether the quoted price was still valid. AR 21-109. CAMSS replied the following day confirming its price. AR 21-109. The Air Force concluded that CAMSS' price was fair and reasonable based on results of a competitive process, AR 22-111 (citing FAR §13.106-3(a)(1)), and that an award to CAMSS represented best value because CAMSS offered the lowest price, AR 22-111. The Air Force awarded the contract to CAMSS on March 27, 2019, AR 23-112, and publicly announced its award decision two days later, AR 24-132.

### C. *Alaska Structure's First Protest in this Court*

Alaska Structure's first protest focused on a claim that the Air Force's award to CAMSS on March 27, 2019 was invalid because CAMSS offered a non-qualifying product. See *Alaska Structures*, 144 Fed. Cl. at 82. Specifically, Alaska Structures contended that CAMSS' shelters

---

[7]Alaska Structures initially filed a protest at GAO and sought production of CAMSS' test results. *See Alaska Structures*, 144 Fed. Cl. at 83 n.6. When that request was denied, it filed its initial protest in this court, and GAO accordingly dismissed the protest before it. *Id*.

[8]A third offeror ("Offeror 3") proposed to meet all minimum requirements and did not provide any test reports. AR 19-104 to 105. Its three-page proposal consisted of two pages of pricing data and one page of technical characteristics, which repeated verbatim those of the solicitation, *see* AR 19-103 to 105, but did not propose the brand name or an equivalent. That offeror's bid accordingly was technically deficient.

5

did not comply with the snow-load requirement specified in the solicitation. *Id*. In addressing a motion by Alaska Structures to complete the record, the court granted that motion in part and required the government or CAMSS to produce the test report showing the snow-load performance of the shelter proposed by CAMSS, but as a supplement to the record and not as a correction to the record. *Id*. at 87.

### D. *Snow Load Performance Test Report and the Air Force's Corrective Action*

On July 17, 2019, CAMSS produced the initial test report showing snow-load performance of the shelter it proposed. *See* CAMSS' Resp. Attach. 1, No. 19-1204C, ECF No. 34. The test report, conducted in October 2018, concluded that the 20QSA "met the requirements of TOP 10-2-175 for a target snow load of 20 [PSF]," having adequately withstood that load per the testing procedures for more than 12 hours. *Id*. at 12. Importantly, however, the test report also showed that the 20QSA shelter tested was a variation that measured only 13 feet long, rather than 32.5 feet as required by the solicitation. *Id*. at 3. After reviewing the initial test report, the Air Force determined that there was "reason to doubt the representation made in CAMSS['] quote that its proposed 32 ½ feet long CAMSS20QSA was tested to verify a snow load capability of 20 PSF." AR 37-207. Out of concern that CAMSS "made a material misrepresentation about its proposed shelter's initial testing for snow load capabilities," the Air Force issued a Notice of Corrective Action ("the Notice") on July 23, 2019. AR 37-207. The Notice announced the Air Force's decision to "(1) terminate CAMSS' contract for convenience; (2) amend the Solicitation to clarify that offerors must include test results with their quotes verifying that the specific shelter they propose was tested to verify a snow load capability of 20 PSF; (3) allow offerors an opportunity to submit new proposals; (4) conduct new evaluations; and, (5) make a new award decision." AR 37-207 to 208.

The Air Force terminated CAMSS' contract for convenience on July 29, 2019, AR 40-213 to 216, and issued a new solicitation on July 31, 2019, AR 41-217 to 225. While nearly identical to the original, the new solicitation eliminated the brand name or equal requirement (instead specifying simply "Small Shelter Systems" that satisfied the listed salient characteristics). AR 41-223 to 224. Unlike the first solicitation, it explicitly included a requirement that "[a]ll quotes must include test results or other documentation with their submission verifying that the specific shelter quoted meets the requirement to be able to withstand a wind load of 60 MPH and ground snow load of 20 PSF." AR 41-224.

Alaska Structures submitted questions regarding the new solicitation on August 5, 2019. AR 42-226. It noted that the term "other documentation" required to verify snow load capabilities was "ambiguous" and asked "what type(s) of documentation the Air Force will accept" to satisfy the verification requirement. AR 42-226. The Air Force answered that "[q]uoters have the discretion to submit test reports and/or any documentation they believe will demonstrate their product meets the requirements of the [s]olicitation." AR 43-228.

The Air Force received five offers in response to the new solicitation. CAMSS' bid was slightly lower than Alaska Structures' bid. *Compare* AR 46-281 (CAMSS' bid), *with* AR 44-230 (Alaska Structures' bid). Unlike the bids of CAMSS and Alaska Structures, the other three proposals did not provide any test reports or documentation of the wind- and snow-load

capabilities of their shelters, *see generally* AR 45; AR 47; AR 48, and therefore were non-compliant.

### E. *Alaska Structures' Further Bid Protests*

After the Air Force took corrective action cancelling the award and issuing the new solicitation, Alaska Structures sought to amend its first complaint to challenge the corrective action. Subsequently, Alaska Structures filed a separate pre-award protest of the new solicitation. *See* Second Compl. No. 19-792C, ECF No. 1. It challenged the corrective action as arbitrary and capricious because the Air Force lacked a rational basis for amending the original solicitation and resoliciting bids and because it declined to disqualify CAMSS from submitting a bid in response to the new solicitation. *See* Second Compl. ¶¶ 44-67. Additionally, Alaska Structures alleged that the new solicitation contained an ambiguous requirement because it did not identify what documentation was acceptable to verify the testing performed. *See* Second Compl. ¶¶ 68-74. CAMSS again moved to intervene, and the court granted its motion. *See* Order Granting Motion to Intervene, No. 19-1204C, ECF No. 12. Because both cases involve the same parties and contain common questions of law and fact, the court consolidated them pursuant to RCFC 42(a).

## JURISDICTION & STANDING

This court has jurisdiction over bid protests pursuant to the Tucker Act, 28 U.S.C. § 1491. The Tucker Act vests this court with jurisdiction to "to render judgment on an action by an interested party objecting to a . . . proposed contract or to a proposed award or the award of a contract or any alleged violation of statute or regulation in connection with a procurement or a proposed procurement." 28 U.S.C. § 1491(b)(1).

A threshold issue is whether Alaska Structures has standing to challenge the Air Force's corrective action, a burden it bears as plaintiff. *See Myers Investigative & Sec. Servs., Inc. v. United States*, 275 F.3d 1366, 1369-70 (Fed. Cir. 2002) (quoting *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 561 (1992)). To demonstrate standing under 28 U.S.C. § 1491(b)(1), Alaska Structures must be an "interested party" who suffered prejudice from a significant procurement error. *CliniComp Int'l, Inc. v. United States*, 904 F.3d 1353, 1358 (Fed. Cir. 2018). An interested party is an actual or prospective bidder with a "direct economic interest" in the procurement. *Myers*, 275 F.3d at 1370; *see also TRAX Int'l Corp. v. United States*, 144 Fed. Cl. 417, 428 (2019); *Veteran Shredding, LLC v. United States*, 140 Fed. Cl. 759, 763 (2018). Generally, an interested party suffers prejudice from a significant procurement error when "*but for the error*, it would have had a substantial chance of securing the contract." *CliniComp*, 904 F.3d at 1358 (emphasis in original); *see also Eskridge & Assocs. v. United States*, 142 Fed. Cl. 410, 422-23 (2019), *appeal docketed*, No. 19-1862 (Fed. Cir. May 10, 2019). An exception arises, however, "when a prospective bidder challenges the terms of the solicitation itself, prior to actually submitting a bid." *Orion Tech., Inc. v. United States*, 704 F.3d 1344, 1348 (Fed. Cir. 2013). In a pre-award protest, such as the one now before the court, the question can arise "whether there is sufficient factual development . . . to apply the primary 'substantial chance' standard." *Veteran Shredding*, 140 Fed. Cl. at 764 (citing *Orion Tech.*, 704 F.3d at 1348-49 ("*Weeks Marine*[*, Inc. v. United States*, 575 F.3d 1352, 1361 (Fed. Cir. 2009),] set out an *exception* to the general standing test [of substantial chance] in the case of *pre-bid*, pre-award

7

protest.") (emphasis added)).  In this instance, the pre-award protest occurs in post-bid but pre-award circumstances, and there is sufficient factual development to apply the "substantial chance" test for standing.

A further showing that a plaintiff must make to establish its standing is "that it was prejudiced by a significant error in the procurement process." *CliniComp*, 904 F.3d at 1358 (citing *Diaz v. United States*, 853 F.3d 1355, 1358 (Fed. Cir. 2017)) (additional citations omitted); *see also TRAX Int'l*, 144 Fed. Cl. at 428.  Determining whether prejudice has been shown for purposes of establishing a plaintiff's standing requires the court to engage in a factual analysis.  *Labatt Food Serv., Inc. v. United States*, 577 F.3d 1375, 1379 (Fed. Cir. 2009)); *see also CliniComp*, 904 F.3d at 1359.  Although the inquiries may be similar, prejudice must be shown either as part of, or in addition to, showing a direct economic interest.  *CliniComp*, 904 F.3d at 1358.  Courts should not "conflat[e] the standing requirements of prejudicial error and economic interest," because doing so would mean that "there would be no such thing as an error non-prejudicial to an economically interested offeror in a bid contest." *Labatt*, 577 F.3d at 1380.  Consequently, prejudice "must be reached before addressing the merits." *Id*. at 1378-79 (quoting *Information Tech. & Applications Corp. v. United States*, 316 F.3d 1312, 1319 (Fed. Cir. 2003)); *see also TRAX Int'l*, 144 Fed. Cl. at 428.

The government contests Alaska Structures' standing to pursue its first protest but not the second.  Hr'g Tr. 25:15 to 26:23 (Oct. 23, 2019).[9]  That partial objection to standing is not well taken because Alaska Structures has pending in the first protest a motion to amend its complaint to challenge the Air Force's corrective action.  Although Alaska Structures' second complaint in effect supersedes the proposed amendment of the first complaint, *see supra*, at 2 n. 4, both remain pending before the court.  And, because only Alaska Structures and CAMSS submitted qualifying bids in response to the revised solicitation, *see supra*, at 6-7, the court finds that Alaska Structures has standing to pursue its protest.

## STANDARD OF REVIEW

### *Motion for Judgment on the Administrative Record*

The standards of the Administrative Procedure Act ("APA"), 5 U.S.C. § 706, govern the court's review of a protest of the government's decisions regarding award of a contract.  *See* 28 U.S.C. § 1491(b)(4) ("In any action under this subsection, the courts shall review the agency's decision pursuant to the standards set forth in section 706 of title 5.").  Under the APA, the court may set aside a government procurement decision that is "arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law," 5 U.S.C. § 706(2)(A), subject to the traditional balancing test applicable to a grant of equitable relief.  *See PGBA, LLC v. United States*, 389 F.3d 1219, 1224-28 (Fed. Cir. 2004); *Hyperion Inc. v. United States*, 115 Fed. Cl. 541, 550 (2014).

"The court may not 'substitute its judgment for that of the agency,'" *Hyperion*, 115 Fed. Cl. at 550 (quoting *Keeton Corrs., Inc. v. United States*, 59 Fed. Cl. 753, 755 (2004) (in turn

---

[9]Further citations to the transcript of the hearing conducted on October 23, 2019 will omit the date.

8

quoting *Citizens to Preserve Overton Park, Inc. v. Volpe*, 401 U.S. 402, 416 (1971), *abrogated on other grounds as recognized in Califano v. Sanders*, 430 U.S. 99, 105 (1977))), but "must uphold an agency's decision against a challenge if the 'contracting agency provided a coherent and reasonable explanation of its exercise of discretion,'" *Id*. (citing *Axiom Res. Mgmt., Inc. v. United States*, 564 F.3d 1374, 1381 (Fed. Cir. 2009)); *see also Tinton Falls Lodging Realty, LLC v. United States*, 800 F.3d 1353, 1358 (Fed. Cir. 2015). The court may overturn the government's procurement decision only "if '(1) the procurement official's decision lacked a rational basis; or (2) the procurement procedure involved a violation of regulation or procedure.'" *Centech Grp., Inc. v. United States*, 554 F.3d 1029, 1037 (Fed. Cir. 2009) (quoting *Impresa Construzioni Geom. Domenico Garufi v. United States*, 238 F.3d 1324, 1332 (Fed. Cir. 2001)). In conducting the rational-basis analysis, the court looks to whether the "the contracting agency provided a coherent and reasonable explanation of its exercise of discretion," *Axiom*, 564 F.3d at 1381 (quoting *Impresa Construzioni*, 238 F.3d at 1333), and it affords "contracting officers . . . discretion upon a broad range of issues," *AgustaWestland N. Am., Inc. v. United States*, 880 F.3d 1326, 1332 (Fed. Cir. 2018) (quoting *Impresa Construzioni*, 238 F.3d at 1332-33). Accordingly, "the disappointed bidder bears a heavy burden of showing that the award decision had no rational basis." *Centech*, 554 F.3d at 1037 (quoting *Impresa Construzioni*, 238 F.3d at 1332-33). The Federal Circuit has specifically emphasized that "corrective action only requires a rational basis for its implementation." *Dell Fed. Sys.*, 906 F.3d at 991.

## ANALYSIS

### A. *Propriety of the Air Force's Corrective Action*

Alaska Structures contests the Air Force's decision to take corrective action on two grounds: that the Air Force's needs had not changed and that the Air Force already had the information it needed to reevaluate the bids submitted in response to the original solicitation. Pl.'s Mot. at 13-14.[10] It argues that the Air Force's decision based on a supposed need to assure that offerors proffered shelters meeting performance requirements was "pretextual" and designed to avoid ruling on the merits of the first protest. *Id*. In this connection, Alaska Structures also contends that the Air Force's failure to disqualify CAMSS from the procurement competition was arbitrary and capricious because CAMSS had materially misrepresented the characteristics of its proffered shelter in its initial quote. *Id*. at 16.

The government responds that "Air Force rationally took corrective action at a time when there was no documented, verified explanation for why CAMSS's first snow load test on a 13.5 [*sic*]-foot variation of its proposed shelter could reasonably be extrapolated to make assertions about the snow load capabilities of CAMSS's 32.5-ft. long shelter for which the Air Force had contracted." Def.'s Reply at 1. The government also contends that it "did not err into excluding CAMSS from further competition because there never has been a finding that CAMSS made a material misrepresentation." *Id*. at 2; *see also* Def.'s Cross-Mot. at 2.

---

[10]Alaska Structures bolsters its contentions by emphasizing that the Air Force's corrective action in effect cancelled the first solicitation and initiated a new one when its needs had not changed. Hr'g Tr. 9:18 to 14:8.

9

CAMSS similarly argues that the Air Force's corrective action was appropriate because "it became apparent that the prior [s]olicitation did not accurately reflect its needs. CAMSS' Cross-Mot. at 16 (heading). CAMSS also avers that the Air Force never found that CAMSS had misrepresented the snow-load capabilities of its shelter, but rather that the Air Force only expressed "concern[]" about CAMSS' reliance on test results for a shorter shelter. *Id.* at 13.

1. *The basis for the Air Force's decision to take corrective action.*

As noted earlier, after CAMSS produced the test report underpinning its original offer, the Air Force decided to take corrective action by terminating the contractual award to CAMSS, revising the solicitation, calling for new proposals, conducting a new evaluation, and making a new award. *See* Notice, AR 38. The contracting officer explained her reasoning, as follows:

> After reviewing CAMSS['] initial test results for its CAMSS20QSA shelter, however, the Air Force has reason to doubt the representation made in CAMSS['] quote that its proposed 32 ½ feet long CAMSS20QSA was tested to verify a snow load capability of 20 PSF. The Air Force is concerned CAMSS made a material misrepresentation about its proposed shelter's initial testing for snow load capabilities. The 20 PSF capability is essential for the weather conditions in Alaska in which the shelters will be used[.] . . . The Air Force wants to ensure the shelters it is procuring have the 20 PSF capability the Air Force requires. In light of the potential misrepresentation made in CAMSS's initial test results, and considering the record suggests the specific 32 ½ feet long variation of the CAMSS20QSA that CAMSS proposed was never tested to verify a snow load capability of 20 PSF, I have determined that corrective action is appropriate.

AR 37-207.

Rather than amending its prior solicitation, the Air Force issued a new solicitation setting out the same requirements as the original solicitation, except that a testing requirement was specified. The new solicitation required that "[a]ll quotes must include test results or other documentation with their submission verifying that the specific shelter quoted meets the requirement to be able to withstand a wind load of 60 MPH and ground snow load of 20 PSF." AR 41-224. The new solicitation further stated that "[t]est results or other documentation verifying this capability can have been prepared either by the quoter or a third-party." AR 41-224.

In the circumstances, Alaska Structures argues that the Air Force's corrective action is overbroad because "there was no need to take corrective action by resoliciting bids and test reports." Pl.'s Mot. at 16. It argues that the Air Force in effect cancelled the original solicitation and did so improperly because it had all the information it needed to make a new award under the original solicitation. *Id.* It invokes *Parcel 49C Ltd. P'ship v. United States*, 31 F.3d 1147, 1151 (Fed. Cir. 1994), for the proposition that "'pretextual' justifications for cancellation of a procurement violate the agency's duty to conduct a fair procurement." See Pl.'s Mot. at 13.

Alaska Structures' argument based on cancellation puts form over substance in characterizing the Air Force's action.  Alaska Structures points out that the number of the solicitation was changed, and the Air Force issued the new, revised solicitation on a new, separate page of the FedBizOpps website.  Hr'g Tr. 8:10 to 9:12.  Even so, the substance of the revised solicitation matched that of the original, excepting only the requirement to provide verifying test results or other documentation.  That additional requirement was at the heart of the corrective action.  In effect, with this change, the original solicitation was reissued in revised form, albeit not as formally amended.  The distinction is not material to an analysis of the change and this court will treat the new solicitation as a revision of the original solicitation, carrying forward and not cancelling the original solicitation.

   2.   *The Air Force's failure to disqualify CAMSS from the competition.*

Alaska Structures contends that the Air Force acted arbitrarily when it failed to disqualify CAMSS from the competition, arguing that CAMSS' initial test results showed that CAMSS had not actually tested its proposed shelter as required, and that its representations in its original offer were material misrepresentations.  Pl.'s Mot. at 16.[11]  Both the government and CAMSS respond that the Air Force's decision to take corrective action was based on a concern about a potential misrepresentation, and that the Air Force never made a finding of an actual misrepresentation by CAMSS.  *See* Def.'s Cross-Mot. at 2; CAMSS' Cross-Mot. at 13-14.

This challenge by Alaska Structures is unavailing.  The Air Force only expressed "concern[]" that CAMSS had made a "potential misrepresentation" when it relied for its first bid on a test of a structure significantly shorter than that which it was offering.  AR 37-207.  Its corrective action responded to that concern, and it understandably called for new offers in connection with a revised solicitation that mandated submission of test results on the actual shelter being offered.[12]  That the Air Force allowed CAMSS to respond with a new, qualifying offer was rational.  In accord with *Dell Federal Systems*, the Air Force supplied "a coherent and reasonable explanation of the exercise of discretion."  906 F.3d at 992.  The Air Force's action was justified and not a pretext.[13]

---

   [11]Acceptance of this contention would mean that only Alaska Structures had submitted a qualifying bid in response to the revised solicitation, *cf*. Def.'s Cross-Mot. at 2, and would win the contract.

   [12]In its prior decision, the court had similarly recognized that "CAMSS' [initial] bid may be fully compliant with the solicitation's requirements, or not.  The court cannot tell which is correct based on the current record."  *Alaska Structures*, 144 Fed. Cl. at 87.  The court did not know upon what testing CAMSS had relied, and there was also the possibility that CAMSS had extrapolated (whether reasonably, or not) the results of a test on a different shelter to the one it was offering.

   [13]The government and CAMSS seek to turn the table on Alaska Structures by contending that the shelter Alaska Structures proposed in response to the Air Force's solicitations was not the same size as that tested to verify snow-load and wind-load capabilities.  *See* Def.'s Cross-Mot. at 23; CAMSS' Cross-Mot. at 2-3.  This contention is spurious and not credible.  The

11

### B. *Whether the Revised Solicitation is Ambiguous*

Alaska Structures contends that the revised solicitation contains a patent ambiguity because it allows offerors to submit "other documentation" verifying the offered shelter have the requisite snow- and wind-load capabilities without identifying what documentation is acceptable. Pl.'s Mot. at 24. "As a general rule, offerors must be given sufficient detail [in a solicitation] to allow them to compete intelligently and on a relatively equal basis." *Glenn Def. Marine (Asia), PTE Ltd. v. United States*, 97 Fed. Cl. 568, 578 (2011) (citation omitted).

This ground for Alaska Structures' protest is academic and not significant. The three bidders on the revised solicitation other than Alaska Structures and CAMSS supplied neither test reports nor other documentation to support their offers, while both Alaska Structures and CAMSS submitted verifying test reports. Both of the qualified offers thus submitted verification that moots this claim of error.

### CONCLUSION

For the foregoing reasons, Alaska Structures' motion for judgment on the administrative record is DENIED and the government's and CAMSS' cross-motions for judgment on the administrative record are GRANTED.[14] The clerk shall enter judgment accordingly.

No costs.

It is so **ORDERED**.

s/ Charles F. Lettow
Charles F. Lettow
Senior Judge

---

verifying test report that Alaska Structures submitted stated that the shelter that was tested was 32 feet long, *see* Pl.'s Reply at 7, reflecting an immaterial rounding or typographical error, *see* Pl.'s Submission of Decl. of Michael Vesper (Oct. 16, 2019), ECF No. 67, when the shelter tested was actually 32.5 feet long, *id*.

The pertinent shelters are constructed in segments of 6.5 feet each, Hr'g Tr. 42:22 to 43:5, and that is why CAMSS' initial test was conducted on a shelter 13 feet long (2 x 6.5), Hr'g Tr. 8:12-13, and Alaska Structures' test was conducted on a shelter 32.5 feet long (5 x 6.5), Hr'g Tr. 21:16-25. The court accordingly grants leave for the submission of the Vesper Declaration.

[14]The court DENIES as moot Alaska Structures' motion to file an amended complaint in No. 19-792C, ECF No. 41. The court also DENIES as moot the previously filed, now superseded, cross-motions for judgment in No. 19-792C, ECF Nos. 29, 32, 33, and 45.